UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILIP HIMMELEIN,

    Plaintiff,

v.

FEDERAL HOME LOAN MORTGAGE
CORPORATION, TROTT LAW, P.C. FKA
TROTT & TROTT, P.C., and ROGER A.
SMITH,

    Defendants.
    _____/

File No. 1:15-cv-813

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This is a mortgage foreclosure case. The matter is before the Court on Defendants Federal Home Loan Mortgage Corporation (Freddie Mac) and Trott & Trott Law, P.C.'s (Trott & Trott) motions to dismiss Plaintiff's complaint for failure to state a claim. (ECF Nos. 12, 13.) Plaintiff Philip Himmelein has filed responses (ECF Nos. 16, 17), to which Defendants have filed replies (ECF Nos. 18, 23). For the reasons that follow, Defendant Freddie Mac's motion will be denied, and Defendant Trott & Trott's motion will be granted in part and denied in part.

**I.**

This matter involves the property located at 4689 106th Avenue, Allegan, Michigan. Plaintiff has lived at the property for 52 years and became a title holder in 1983. In December 2008, Plaintiff obtained a $105,000 loan, and granted a mortgage in favor of the lender Fifth

Third Mortgage – MI, LLC, as security for that loan. The mortgage was recorded on January 7, 2009. On March 15, 2013, Fifth Third Mortgage – MI, LLC assigned the mortgage to Fifth Third Mortgage Company.

Sometime around 2013, Plaintiff fell behind on his mortgage payments. Eventually, Plaintiff defaulted on the loan and foreclosure by advertisement occurred. Notice of foreclosure was published in a local newspaper on March 17, March 24, March 31, and April 7, 2014. Notice of foreclosure was posted at an entrance to the property on March 20, 2014. Plaintiff does not deny that the notice was posted, but contends that he did not see it because the property is a large farm with four different entrances. (Compl. ¶ 24, ECF No. 1.) On April 17, 2014, Defendant Freddie Mac purchased the property at the foreclosure sale.

Under Mich. Comp. Laws § 600.3240, Plaintiff had six months to redeem the property from the date of the foreclosure sale. The Sheriff's Deed noted that Defendant Trott & Trott was Freddie Mac's designee responsible for assisting "an appropriate person redeeming the Property in computing the exact amount required to redeem the Property and to receive redemption funds." (Ex. H, ECF No. 13-9.) It further stated, "[i]f you choose to utilize this assistance, contact Trott & Trott, P.C. at RedemptionFigures@trottlaw.com or by phone at (248) 593-1308." (*Id.*)

Plaintiff contends that his daughter, who had power of attorney, "repeatedly called Trott & Trott" in an attempt to "get a payoff amount on the mortgage loan." (Compl. ¶ 25.) Plaintiff's daughter also contacted Fifth Third Bank, who referred her to Trott & Trott.

Despite her alleged willingness to pay, Trott & Trott never responded to her. On October 1, 2014, prior to the expiration of the redemption period, Freddie Mac executed a quitclaim deed and assigned its interest in the property to Roger Smith. Plaintiff's daughter attempted to purchase the property back from Smith, but Smith would "only restore title to Plaintiff in exchange for tendering another, more valuable property." (*Id.* ¶ 36.)

Plaintiff filed this action on August 12, 2015. Plaintiff's complaint raises three claims: (1) denial of redemption rights pursuant to Mich. Comp. Laws §§ 600.3240 and 600.3248 by Defendants Freddie Mac and Trott & Trott, (2) violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, by Defendant Trott & Trott, and (3) an action for quiet title.[1]

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a party may assert "failure to state a claim upon which relief can be granted" as an affirmative defense. A Rule 12(b)(6) motion to dismiss requires the Court to "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff,'" but the Court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). Under the federal notice pleading standards, a complaint must contain "a short and plain statement of the claim

---

[1] Neither Trott & Trott's motion to dismiss nor Freddie Mac's motion to dismiss mention the quiet title claim. As such, the Court's analysis reaches the merits of only the first two counts.

3

showing how the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this statement is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Plaintiff must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 677).

The Court may consider the complaint, "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.

**A. Denial of Redemption Rights Claim Against Defendants Trott & Trott and Freddie Mac**

Plaintiff first claims that, because Trott & Trott, acting on behalf of Freddie Mac and authorized to receive redemption funds, refused to respond to Plaintiff's daughter and refused to acknowledge Plaintiff's tender of funds, both Trott & Trott and Freddie Mac are liable for denying Plaintiff his redemption rights under Mich. Comp. Laws §§ 600.3240 and 600.3248.

Michigan law requires the purchaser of foreclosed property to "provide an affidavit with the deed" that declares "the exact amount" of payment needed to redeem the property, including "any daily per diem amounts, and the date by which the property must be redeemed." *Id.* § 600.3240(2). Defendants complied with this requirement. On April 17, 2014, the same day that Freddie Mac purchased the property at the foreclosure sale, an affidavit was filed stating that the redemption amount is $69,196.31, plus interest at a per diem rate of $10.43. (Aff. of Purchaser, ECF No. 13-9, PageID.184.) The affidavit noted that "this amount may increase to include amounts paid by [Freddie Mac] for taxes, amounts necessary to redeem senior liens, condominium assessments, community association assessments, insurance premiums, or any other amounts as provided by MCL 600.3240(4), as well as interest thereon at the interest rate specified in the mortgage from the date of payment to the date of redemption." (*Id.*) The affidavit further stated that "[t]he last date the Property may be redeemed is October 17, 2014." (*Id.*)

Mich. Comp. Laws § 600.3240(2) also gives the purchaser the option to "include in

the affidavit the name of a designee responsible on behalf of the purchaser to assist the person redeeming the property in computing the exact amount required to redeem the property." Freddie Mac did so. The affidavit of purchaser stated:

> [Freddie Mac] has designated Trott & Trott, P.C. as its designee responsible to assist an appropriate person redeeming the Property in computing the exact amount required to redeem the Property and to receive redemption funds. If you choose to utilize this assistance, contact Trott & Trott P.C. at RedemptionFigures@trottlaw.com or by phone at (248) 593-1308. Pursuant to statute, Trott & Trott, P.C. will charge a fee of $150.00 . . . if you opt to use this assistance.

(Aff. of Purchaser, ECF No. 13-9, PageID.184.)

Thus, as an agent for Freddie Mac, Trott & Trott was entitled to receive redemption funds from Plaintiff. Importantly, Mich. Comp. Laws § 600.3248 states that:

> If any person entitled to receive such redemption moneys, shall, upon payment or tender thereof to him, refuse to make and acknowledge such certificate of payment, he shall be liable to the person aggrieved thereby, in the sum of $100.00 damages, over and above all the actual damages sustained, to be recovered in a civil action . . . .

*Id.* Plaintiff has brought forth numerous letters sent from his daughter to Trott & Trott, illustrating her attempts to determine how much was owed on the Property and how to make payments. On June 16, 2014, Plaintiff's daughter sent a letter to Fifth Third Bank and copied Trott & Trott. The letter stated, in part:

> Hi Lindsey,
>
> Good news, the sale of my business is through and if you can please give me a buyout for my dad's mortgage, *I will be glad to pay it completely off*. I will also forward this to T&T but they either send me back to you or insist they

> cannot talk to me. If we can get this matter resolved as fast as possible, sooner I can sleep.

(ECF No. 1-1, PageID.34-.35) (emphasis added). Plaintiff alleges his daughter did not receive a response from Trott & Trott, and sent another letter to Fifth Third, again copying Trott & Trott, on July 21, 2014. This letter stated, in part:

> Trott and Trott suddenly are not speaking with me saying I am not authorized when I sent them the power of attorney Paper in the very beginning.
>
> The business sale proposal went through and I did make the sale so I could save my parents house, so *I have all the money I need, so I just need to be told where and how much please and I will be glad to take care of this*. It has gone on way [too] long. . . . I have sold a business I built and owned for 14 years to save this property, so I hope you can appreciate the importance it means. I have filled out so much paper work. *I have offer[ed] to make payments . . .* I have been switched from talking to Trott and Trott back to 5/3 and Trott and Trott and fifth/third, I thought this was part of a stall tactic to help me keep my property until the sale of my business. But nobody is talking to me now.
>
> I was under the impression you wanted to help me get my dad back on track. I am confused. I am sending to Team J Trott & Trott, who will not now acknowledge me. *Please take my money!!!!!!!*

(ECF No. 1-2, PageID.37) (emphasis added). The forwarded letter to Trott & Trott contained a cover page stating "I would think you people would want to clear a debt and take my money? I gave up a lot for you to have it!" (*Id.* at PageID.38.) After again receiving no response, on August 15, 2014, Plaintiff's daughter sent a letter to Trott & Trott stating, "As I have told 5/3 *I have the Money for the full payment of Mortgage, I just need to know who and the exact payout To whom I pay it to.* Please help me on this matter." (*Id.* at PageID.45) (emphasis added).

While Trott & Trott "does not admit that such letters were ever sent, or received by Trott," construing the facts in the light most favorable to Plaintiff, for purposes of this motion, the Court presumes that the letters were sent to Trott & Trott. Trott & Trott contends that, because some language in the emails refers to paying off a "debt" or the "mortgage loan" rather than specifically stating the "redemption amount," "Plaintiff failed to offer facts that would allow any kind of recovery against Trott Law, P.C." (Def.'s Mot. to Dismiss 7, ECF No. 13.) This argument is not persuasive. The letters indicate that Plaintiff's daughter attempted to contact Trott & Trott to determine how much was owed. The July 21 letter stated that Plaintiff's daughter had all the money needed and had "offer[ed] to make payments." Plaintiff's daughter made clear that she was trying to "save the property." As the party "responsible to assist an appropriate person redeeming the Property in computing the exact amount required to redeem the Property and to receive redemption funds," (Aff. of Purchaser, ECF No. 13-9), Trott & Trott has failed to show Plaintiff has not "raised[d] a right to relief above the speculative level," *Twombly*, 550 U.S. at 570, simply because Plaintiff's daughter failed to use precise legal terminology in her attempt to contact Trott & Trott and "save the property."

Defendant Freddie Mac contends Plaintiff "does not claim in his Complaint or state any fact that money in any fashion, type or character were tendered to [Freddie Mac] or its designee." (Def.'s Mot. to Dismiss 8, ECF No. 12.) For purposes of this motion, and construing the facts in the light most favorable to the Plaintiff, the Court disagrees. In

arguing that Plaintiff did not tender payment to Freddie Mac or Trott & Trott, Freddie Mac cites Black's Legal Dictionary, which defines tender as:

> A valid and sufficient offer of performance; specif., an unconditional offer of money or performance to satisfy a debt or obligation. The tender may save the tendering party from a penalty for nonpayment or nonperformance or may, if the other party unjustifiably refuses the tender, place the other party in default.

Black's Law Dictionary (10th ed. 2014). Based on the letters sent to Trott & Trott, Plaintiff's daughter "*offer[ed] to make payments*," begged Trott & Trott to take her money, informed Trott & Trott that she had all of the money needed to make the payments, and stated that she would be glad to pay the mortgage completely off. Accordingly, drawing all reasonable inferences in Plaintiff's favor, Plaintiff's claim that he "tendered payment" pursuant to Mich. Comp. Laws § 600.3248 survives Defendants' motions to dismiss.

Lastly, both Trott & Trott and Freddie Mac note that, in spite of their actions, Plaintiff still could have redeemed the property. Freddie Mac notes that under Mich. Comp. Laws § 600.3240, Plaintiff could have made redemption payments to the Register of Deeds. Trott & Trott notes that it was not the "proximate cause" of any alleged damages suffered by Plaintiff because "Plaintiff had an alternate means of redeeming the property prior to the expiration of the redemption period." (Def.'s Mot. to Dismiss 9, ECF No. 13.) Specifically, Trott & Trott notes that "even after the alleged attempts to contact Defendant Trott Law, Plaintiff allegedly attempted to redeem with Co-Defendant [Roger Smith]. Thus, the allegations against Trott Law did not cause Plaintiff to lose his opportunity to recover the

9

property from redemption."[2] (*Id.* at 11.) While Plaintiff may have had alternative means to redeem the property, the statute is clear: "If *any person* entitled to receive such redemption moneys, shall, upon payment or tender thereof to him, refuse to make and acknowledge such certificate of payment, *he shall be liable* . . . ." Mich. Comp. Laws § 600.3248. Because Plaintiff has alleged facts showing that Trott & Trott, acting on Freddie Mac's behalf, refused to make or acknowledge Plaintiff's offer to make payments, Plaintiff's claim will survive Defendants' motions to dismiss.

## B. FDCPA Claim Against Defendant Trott &Trott

Second, Plaintiff alleges that Defendant Trott & Trott's actions of "refusing to accept funds which would have been more than adequate to redeem the property" and "preparing and executing a quit claim deed and Assignment of Interest in Sheriff's deed from Freddie Mac to Roger A. Smith" violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f (FDCPA). (Compl. ¶¶ 50-52.) Defendant Trott & Trott argues that even if it is a debt collector under the FDCPA, its actions taken during the redemption period, *after* foreclosure had already occurred, do not implicate the FDCPA. Neither the Sixth Circuit nor Michigan courts have addressed whether a defendant may be liable under the FDCPA for actions taken

---

[2] Plaintiff's complaint states that, during the redemption period, Plaintiff's daughter "obtained a cashier's check in the amount of $70,000 and brought it over to Mr. Smith's home. However, he was in the hospital and his wife would not accept the check. Now Mr. Smith states that he will only restore title to Plaintiff in exchange for tendering another, more valuable property." (Compl. ¶¶ 36-37, ECF No. 1.) Plaintiff, however, has not brought a claim against Smith alleging denial of redemption rights.

during the redemption period. *See Burks v. Washington Mut. Bank, F.A.*, No. 07-13693, 2008 WL 4966656, at *9 n.12 (E.D. Mich. Nov. 17, 2008).

Section 1692f of the FDCPA provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. As the foregoing language makes clear, this "section[] can only be violated by debt collectors who are *collecting, or attempting to collect, 'debts*.'" *Burks*, 2008 WL 4966656, at *8 (emphasis added). The FDCPA defines "debt" as "any *obligation* or alleged *obligation* of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not *such obligation* has been reduced to judgment." 15 U.S.C. §1692(a)(5) (emphasis added).

In *Glazer v. Chase Home Finance, LLC*, 704 F.3d 453, 464 (6th Cir. 2013), the Sixth Circuit made clear that a foreclosure action is considered debt collection under the FDCPA. The court stated that "if a purpose of an activity taken in relation to a debt is to 'obtain payment' of the debt, the activity is properly considered debt collection." *Id.* at 460. Plaintiff argues that *Glazer* also stands for the proposition that "the collection of the redemption payment . . . is a means of collecting the underlying home debt, because the redemption payment is applied to the payment of the underlying debt[.]" (Pl.'s Resp. to Defs.' Mot. to Dismiss 16-17, ECF No. 14.) The Court disagrees.

11

As the court in *Glazer* made clear, actions taken by debt collectors leading up to a foreclosure sale are taken for the purpose of obtaining payment on the underlying debt. *Id.* at 461. But "upon a foreclosure sale, the mortgage debt is considered paid[.]" *Senters v. Ottawa Sav. Bank, FSB*, 503 N.W.2d 639, 641 (Mich. 1993); *see also Dunitz v. Woodford Apartments Co.*, 209 N.W. 809, 810 (Mich. 1926) ("A foreclosure of a mortgage extinguishes it. When the amount due under the mortgage is paid to the mortgagee by the purchaser at the sheriff's sale, the lien is destroyed, and the purchaser becomes the owner of an equitable interest in the mortgage premises which ripens into a legal title if not defeated by redemption as provided by law."). In this case, Freddie Mac purchased the home at the foreclosure sale and thus "extinguished the debt." While Plaintiff had a statutory right to make a payment and redeem the property in the six months following the foreclosure sale, Plaintiff had no *obligation* to make payments on a debt that no longer existed. *See Burks*, 2008 WL 4966656, at *9 ("At the time of [the defendant's] allegedly abusive conduct plaintiffs had no outstanding obligation to pay money because the foreclosure proceedings were complete and the home had already been sold at a sheriff's sale.").

Because Trott & Trott's actions occurred while there was no longer a "debt" to enforce, Trott & Trott cannot be held liable under the FDCPA, and Plaintiff's FDCPA claim will be dismissed. *See Burks*, 2008 WL 4966656, at *9; *see also Conlin v. Trott & Trott P.C.*, No. 13-14377, 2014 WL 1746155, at *3 (E.D. Mich. Apr. 30, 2014) ("Because the summary

eviction proceeding action filed by [the defendant] does not seek to collect on a debt, any action by [the defendant] in initiating such an action cannot violate the FDCPA.").

Moreover, even assuming that the FDCPA did apply to Trott & Trott's actions during the redemption period, Michigan courts have made clear that a purchaser is able to assign its interest in the purchased property during the redemption period. *See Dunitz*, 209 N.W. at 810 ("This equitable interest, so acquired by a purchaser at a foreclosure sale by advertisement, may, during the period of redemption, be sold or assigned if the purchaser wishes."). Accordingly, Plaintiff's claim that a FDCPA violation occurred when Trott & Trott "prepar[ed] and execut[ed] a quit claim deed and Assignment of Interest in Sheriff's Deed from Freddie Mac to Roger A. Smith" has no merit.

### IV.

For the reasons stated, Defendant Freddie Mac's motion to dismiss will be denied, while Defendant Trott & Trott's motion to dismiss will be granted in part and denied in part. Plaintiff's FDCPA claim against Defendant Trott & Trott will be dismissed, while Plaintiff's remaining claims survive Defendants' motions to dismiss. An Order will enter consistent with this Opinion.


Date:  December 31, 2015               /s/ Robert Holmes Bell
                                       ROBERT HOLMES BELL
                                       UNITED STATES DISTRICT JUDGE